Lupe C. Rodriguez, Jr., Esq. (SBN 175449)
GRACE HOLLIS LOWE HANSON & SCHAEFFER LLP
3555 Fifth Avenue
San Diego, CA 92103
Phone: (619) 692-0800
Fax:    (619) 692-0822

Attorneys for Defendant
PATRICIA MARIE CHAIDEZ

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HON. JEFFREY T. MILLER)

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 07-CR-3278-JM |
| Plaintiff, | **STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION** |
| v. | |
| PATRICIA MARIE CHAIDEZ, | |
| Defendant. | Date: March 28, 2008<br>Time: 11:00 a.m. |

**I.**

**STATEMENT OF FACTS[1]**

On November 18, 2007, at approximately 2129 hours, Patricia Marie Chaidez (hereinafter "Ms. Chaidez") attempted to enter the United States from the Republic of Mexico at the Calexico, CA West Port of Entry. Ms. Chaidez was the driver of a 1998 white Lincoln Navigator and was accompanied by Yolanda Rojas Newland. Customs and Border Protection Officers ("CBPO") were conducting operations with canine units as Ms. Chaidez approached the vehicle primary inspection area. CBP Canine Enforcement Officer ("CEO") J. Jones noticed his canine unit alerted to the gas tank of the vehicle driven by Ms. Chaidez. CEO Jones informed other CPB officers of the alert.

---

[1] The statement of facts is a mere recital of the facts as provided by the Government in discovery. The defendant reserves the right to take a position contrary to the following statement of facts at the motions hearing and at trial.

1    In the pre-primary inspection area, CEO Barroso obtained identification from Ms. Chaidez and Ms. Newland, then conducted an inspection of the vehicle. CEO Barroso noticed the tank sounded solid and appeared to have been tampered with. CEO Barroso informed primary inspector CBPO A. Payton of his suspicions and requested CBPO Payton refer Ms. Chaidez, Ms. Newland, and the vehicle they occupied to the CBP Vehicle Secondary Area after his inspection.

In the Vehicle Secondary Area, CBPO J. Becerra obtained a negative customs declaration from Ms. Chaidez. CBPO Becerra asked Ms. Chaidez about the ownership of the vehicle she was driving and their destination. Ms. Chaidez stated she purchased the vehicle three months ago and they were going to El Centro, CA. CEO Jones and CBPO Becerra conducted a secondary inspection of the vehicle. CEO Jones discovered an access panel leading to the vehicle's gas tank beneath the carpet under the seat behind the driver. Discovered within the gas tank of the vehicle were forty-four (44) packages, with a combined weight of 48.10 kilograms (105.82 pounds) of cocaine.

During a post-arrest statement, Ms. Newland stated that she and Ms. Chaidez departed Ms. Chaidez's residence in El Centro, CA in a 2000 Acura owned by Chaidez with the intention of ultimately going to Mexicali, Baja California, Mexico. Ms. Newland stated she and Ms. Chaidez parked the Acura in Calexico, CA and entered into Mexico afoot. Ms. Newland stated the reason for entering into Mexico afoot was so Ms. Chaidez and Ms. Newland could retrieve the Lincoln Navigator and drive it into the United States. Ms. Newland claimed that Ms. Chaidez was the owner of the Lincoln Navigator. Ms. Newland claimed that she was to drive the Acura to El Centro as Ms. Chaidez continued to drive the Navigator. However, all of this information is contradicted by Ms. Newland's first statement.

On November 21, 2007 ICE SA Saenz applied for a Search Warrant with the United States Magistrate Judge in El Centro, California for the 2001 Acura MDX sports utility vehicle. The Search Warrant was granted.

The vehicle was transported from its public location at 201 2nd Street, Calexico, CA to the secured area of the Calexico, CA East Port of Entry. On November 23, 2007 at approximately 1237 hours, SA Saenz executed the Search Warrant for the 2001 Acura MDX. Found within the Acura MDX were: 1) current insurance ID card; 2) one Greyhound bus ticket receipt/itinerary issued in the name of Yolanda Rojas; 3) gas receipt; 4) bank deposits totaling $1975.00 at Wells Fargo Bank; 5) two pre-paid

phone cards; 6) One Boost Mobile booklet; 7) One invoice for automotive repairs; 8) One receipt for automotive tow service; and 8) one scratch piece of paper with directions to "889 Commercial."

Additionally, on November 27, 2007, ICE SA Saenz applied for a Search Warrant with the United States Magistrate Judge in El Centro, California for 862 Adams, Apt. A, El Centro, CA 92243. The Search Warrant was granted.  SA Saenz seized the following from the apartment: 1) various bank statements; 2) various notebooks; 3) various receipts; 4) DMV documentation; and 5) Narcotics paraphernalia.

On or about November 18, 2007, Defendant was indicted on one count of violating Title 21 U.S.C.  Secs. 952 and 960;  Title 21 U.S.C. 841(a)(1);  Title 18 U.S.C. Sec. 2.

## II.

## DUE PROCESS MANDATES DISMISSAL OF THE INDICTMENT FOR OUTRAGEOUS GOVERNMENT CONDUCT

The existence of police misconduct that disregards the constitutional mandate of due process is a question of law.  <u>United States v. Ramirez, et al.</u> 710 F.2d 535,539 (9th Cir. 1983).  Prosecution is barred "when the government's conduct is so grossly shocking and so outrageous as to violate the universal sense of justice." <u>Id.</u> The police misconduct must be "repugnant to the American system of justice." <u>United States v. Smith, et al.</u> 924 F.2d 889,897 (9th Cir. 1991).  Furthermore, federal courts are vested with supervisory power to dismiss the indictment on the basis of government misconduct to preserve the integrity of the judicial process. <u>Ramirez,</u> 710 F.2d at 541.  The supervisory power must be invoked to further any of these three purposes, 1) to implement a remedy for violation of recognized rights, 2) to preserve judicial integrity by ensuring that a conviction rests on appropriate consideration validly before the jury, and 3) as a remedy designed to deter illegal conduct. <u>Id.</u>

The actions by the agents in this case exceeded the bounds of permissible conduct.  The agents deliberately and intentionally deceived the issuing magistrate by providing false information on the affidavit submitted in support of the search warrant.  Without these false statements there would be no probable cause to search Ms. Chaidez's private residence and the Acura located at 201 2nd Street, Calexico, CA.  The virtue of the Fourth Amendment is the requirement that a judicial mind will review the existence of probable cause.  This protection of individual rights is undermined and contravened

1  when affiants deliberately provide false information to the magistrate. This Court cannot condone this
2  flagrant disregard of constitutional procedures designed to guard against arbitrary deprivation of life and
3  liberty. The government has obtained an indictment against Defendant based on statements, tangible
4  items, and other evidence seized through outrageous misconduct. The agents provided perjured
5  information and have violated the law. This court must dismiss the indictment to vindicate Defendant's
6  constitutional rights, condemn and deter this type of outrageous police misconduct, and preserve the
7  integrity of the judicial process.
8       During Ms. Newland's first post-arrest statement she stated that she and Ms. Chaidez drove the
9  white Lincoln Navigator from El Centro to Mexico. However, the agents failed to provide this
10 contradictory testimony to the Magistrate when they were requesting the search warrant. Furthermore,
11 Ms. Newland's post-arrest statements contain various contradictions with her second post-arrest
12 statement. Given that Agent Saenz failed to provide any of this contradictory testimony to the
13 Magistrate, it is apparent that he was attempting to mislead the Magistrate in order to secure the search
14 warrant. This Court must not condone this type of activity and should dismiss the indictment on this
15 basis.

**III.**

**THE FOURTH AMENDMENT MANDATES SUPPRESSION OF THE FRUITS SEIZED PURSUANT TO A SEARCH WARRANT BASED ON INTENTIONAL AND MATERIAL MISREPRESENTATIONS FOR WHICH PROBABLE CAUSE WAS NOT ESTABLISHED.**

20       The Fourth Amendment of the United States Constitution protects people against unreasonable
21 searches and seizures. U.S. Const. Amen. IV. To safeguard constitutional values and individual privacy
22 rights, a search warrant must be issued upon probable cause determined by a detached and neutral
23 magistrate. See *Almeida-Sanchez v. U.S.,* 413 U.S. 266, 277 (1973). To permit affiants to deliberately,
24 recklessly, and intentionally mislead magistrates will strip the probable cause requirement from its
25 essence and meaning. *Franks v. Delaware,* 438 U.S. 154, 168 (1978).
26       A defendant is constitutionally entitled to an evidentiary hearing to challenge the veracity and
27 legality of a facially valid affidavit by only making a substantial preliminary showing that 1) the affidavit
28 contains intentionally or recklessly false statements, and 2) the affidavit cannot support a conclusion of

1  probable cause without the alleged false information. *United States v. DeLeon,* 979 F.2d 761, 763 (9th Cir. 1992). Clear proof of deliberate or reckless false statements is not required to overcome the substantial preliminary showing. *United States v. Chesher,* 678 F.2d 1353, 1362 (9th Cir. 1992). In determining whether there is probable cause to search, the relevant inquiry is whether "in light of all the circumstances set fort in the affidavit, there is fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983). Sufficient information must be furnished to give the magistrate a substantial basis to make a 'practical, common-sense decision' that probable cause exists. *United States v. Stanert,* 726 F.2d 775, 778 (9th Cir. 1985).

Agent Saenz deliberately and intentionally provided false information in the affidavit submitted to the magistrate in support of the search warrants. Specifically, paragraph thirteen of the affidavit outlines that Ms. Newland stated that she and Ms. Chaidez departed El Centro in a 2000 Acura. The paragraph further states that they parked the Acura in a parking facility in Calexico, CA and they entered Mexico afoot (Exhibit A - Search warrant affidavit supporting probable cause to search the Acura and Ms. Chaidez's residence). However, Agent Saenz failed to provide information that Ms. Newland stated in her first post-arrest statement that she and Ms. Chaidez drove the Lincoln Navigator across the border. Despite having this knowledge, Agent Saenz nonetheless decided to provide the magistrate with the information provided by Ms. Newland in hopes of obtaining a search warrant. The prior statements of Ms. Newland are critical to the determination of probable cause. If the information were included in the affidavit, the magistrate could have concluded that the government did not have sufficient information to search the Acura and the apartment. The magistrate could have determined that Ms. Newland was not credible and therefore there was not sufficient information to issue a search warrant. Therefore, the magistrate could have prevented the agents from going on a fishing expedition invading Defendant's privacy and illegally searching her personal affects.

If one redacts this false information from the affidavit, not enough credible information remains to support the magistrate's finding of probable cause. It can be inferred that Agent Saenz believed that without this information there was not enough information to support a finding of probable cause, otherwise there would be no reason to intentionally provide the incomplete information to the magistrate. Reviewing the affidavit with the incomplete and controverted information omitted clearly demonstrates

1 that there is no individualized or particularized suspicion regarding the Acura or the apartment. Therefore, the remaining information lacks indicia of probable cause as to render its determination unreasonable.

Additionally, paragraph eighteen of Agent Saenz' affidavit states that the canine screen outside the vehicle was "inconclusive." (See Exhibit "A.") Most certainly if the statements of Ms. Newland are suppressed based on the above arguments, the "inconclusive" canine screen lacks the necessary probable cause for the execution of a search warrant of the Acura.

Canine inspections at immigration checkpoints utilize dogs especially trained to detect contraband or hidden people in vehicles. When a dog trained to detect such contraband or people alerts in the near presence of a particular vehicle, "that action is sufficient to give rise to probable cause to search that vehicle." United States v. Dovali-Avila, 895 F.2d 206, 207 (5th Cir. 1990). Courts have found that the government sufficiently verifies a canine alert when the agent handling the canine testifies under oath that his or her canine partner was so trained and certified to alert on the day in question. See e.g., United States v. Sundby, 186 F.3d 873, 876 (8th Cir. 1999) (finding dog's reliability established by affidavit only stating dog's training and certification to detect contraband; detailed accounting of dog's track record and education not required).

However, in this instance Agent Saenz specifically averred that he asked the CBP Canine Enforcement Officer if the canine's actions were an indication that the vehicle contained narcotics in that area. Canine Enforcement Officer Alba stated that it was "inconclusive." (See Exhibit "A" at ¶ 18.) Accordingly, there was never an alert by the canine in this matter concerning the Acura. If the statements of Ms. Newland are excluded based on the above-stated arguments, the "inconclusive" canine alert falls far short of the probable cause requirement to search the Acura.

### IV.

### LEAVE TO FILE FURTHER MOTIONS

Defense counsel was not provided with the video-taped statement of Ms. Newland until March 11, 2008. Defense counsel had previously requested the video-taped statement and informed the government that he was scheduled to be out of the office from March 7-14. Due to the late disclosure of the video-taped statement, defense counsel has not had an opportunity to adequately review the

statement. As counsel reviews the video-taped statement, additional motions may become necessary, including motion to suppress evidence, suppress statements, bifurcation or motions to attack the validity of the underlying indictment. Additionally, as information comes to light, due to the government providing additional discovery in response to these motions or an order of this Court, the defense may find it necessary to file further motions. It is, therefore, requested that defense counsel be allowed the opportunity to file further motions based upon information gained through the discovery process.

## V.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court grant these motions.

Respectfully submitted,

Dated: March 13, 2008    /s/ Lupe C. Rodriguez, Jr.
Lupe C. Rodriguez, Jr., Esq.
Attorney for Defendant,
PATRICIA MARIE CHAIDEZ