```
 1  KAREN P. HEWITT
    United States Attorney
 2  ANDREW G. SCHOPLER
    Assistant U.S. Attorney
 3  California State Bar No. 236585
    Federal Office Building
 4  880 Front Street, Room 6293
    San Diego, California 92101-8893
 5  Telephone No.: (619) 557-5836
    Facsimile No.:  (619) 235-2757
 6
    Attorneys for Plaintiff
 7  United States of America
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) Case No. 07CR3278-JM |
|---|---|
| Plaintiff, | ) Date:   March 28, 2008<br>) Time:   11:00 a.m. |
| v. | ) UNITED STATES' RESPONSE IN |
| PATRICIA M. CHAIDEZ (1),<br>YOLANDA ROJAS NEWLAND (2), | ) OPPOSITION TO DEFENSE<br>) MOTIONS TO: |
| Defendants. | ) (1) DISMISS INDICTMENT DUE<br>)     TO GOVERNMENT MISCONDUCT<br>) (2) SUPPRESS EVIDENCE<br>)     (SEARCH WARRANT)<br>) (3) FILE FURTHER MOTIONS<br>)<br>) TOGETHER WITH STATEMENT OF<br>) FACTS, AND MEMORANDUM OF<br>) POINTS AND AUTHORITIES |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel KAREN P. HEWITT, United States Attorney, and ANDREW G. SCHOPLER, Assistant U.S. Attorney, and hereby files its response in opposition to the motions filed on behalf of defendant PATRICIA MARIE CHAIDEZ ("Chaidez") and joined by defendant YOLANDA ROJAS NEWLAND ("Newland") (or collectively as "Defendant" or "Defendants"), which is based upon the files and records of this case.

I

**INTRODUCTION**

Defendants stand charged with importing 48.10 kilograms of cocaine, in violation of 21 U.S.C. §§ 952 and 960, and possessing with intent to distribute 48.10 kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1). **As mentioned in its filing on February 3, 2008, the United States is still considering additional charges, including a conspiracy charge and enhancements under 21 U.S.C. § 851.**

II

**STATEMENT OF FACTS**

**A.    CRIMINAL HISTORY**

**(1) Defendant Chaidez**

In 1998, Chaidez was sentenced in Los Angeles County Superior Court to 3 years in prison for possession of a controlled substance. Chaidez was also convicted in Los Angeles courts in separate 1996 incidents of forgery and second-degree burglary.

**(2) Defendant Newland**

In 1998, Newland was sentenced in Los Angeles County Superior Court to 3 years of probation for possession of controlled substance paraphernalia. In 1999, Newland was sentenced to 180 days of jail and 3 years of probation for possession of a controlled substance. Newland was also convicted in 1991 of theft and in 1997 of petty theft with prior.

**B.    THE INSTANT ARREST**

On Sunday, November 18, 2007, at about 9:29 p.m., defendant Chaidez drove a 1998 Lincoln Navigator, bearing California license plate number 5WCR052, into the United States via vehicle primary lane 4 at the Calexico West Port of Entry, with defendant Newland in the passenger seat and 48.10 kilograms of cocaine concealed within the vehicle's gas tank. Chaidez is the registered owner of the Lincoln Navigator (the registration card was issued on July 30, 2007).

**(1) Pre-Primary: Canine Alert and Tampered Gas Tank**

During pre-primary roving operations, Customs and Border Protection Canine Enforcement Officer ("CEO") Jeffrey Jones' canine alerted to the gas tank of the Lincoln Navigator. After informing other agents of the alert, another agent, CEO Enrique Barroso, obtained identification from the defendants and inspected the vehicle, noticing that the gas tank tapped solid and the gas tank's bolts appeared to have been tampered with. CEO Barroso asked the primary officer, Customs and Border Protection Officer ("CBPO") A. Payton, to refer the vehicle to secondary inspection.

**(2) Primary: Nervousness**

CBPO Payton conducted a primary inspection of the defendants, obtaining negative declarations from each. CBPO Payton noticed that Chaidez became nervous and fidgeted with her hands during the primary inspection.

CBPO Payton then referred the vehicle to secondary inspection.

### (3) Secondary: 48.10 Kilograms of Cocaine in Gas Tank

At about 9:45 p.m., in the secondary inspection area, CBPO Jorge Becerra questioned Chaidez, asking if they were bringing anything from Mexico. Chaidez stated that they were coming from dinner in Mexicali, and possibly had left over torta. Chaidez stated that she purchased the vehicle three months ago and that they were going home to El Centro.

CEO Jones and CBPO Becerra searched the vehicle. CEO Jones discovered an access panel leading to the vehicle's gas tank beneath the carpet behind the driver's seat. The agents recovered 44 cellophane-wrapped packages, containing a total of 48.10 kilograms (105.82 pounds) of cocaine.

### (4) Further Inspection of Vehicle

When Special Agent ("SA") Luis Saenz of Immigration and Customs Enforcement ("ICE") responded to the scene, he noted that the Lincoln Navigator's odometer indicated 201,856 miles, the fuel gauge showed a ¼ tank of gas, and that there was only one key on the key ring.

### (5) Arrest of Defendants; Discovery of Chaidez's Acura

At 9:53 p.m., the defendants were placed under arrest. Chaidez had $680 in her possession (thirty-four $20 bills), and Newland had $15 in her possession (three

1    $5 bills). In their personal effects, SA Saenz also
2    found a parking receipt, dated November 18, 2007, for
3    Double AA Parking & Trucking, Inc., at 201 2nd Street in
4    Calexico, California, for a "2000 Acura." SA Saenz and
5    SA C. Herzog drove to "AA Parking" in Calexico,
6    California, and discovered a gold 2001 Acura MDX, bearing
7    California license plate number 5YNS295 and registered
8    to defendant Chaidez.

9        **C.  POST-ARREST STATEMENTS**

10           **(1) Defendant Newland's First Videotaped Statement**

11   On November 19, 2007, at about 1:13 a.m.—less than
12   four hours after the defendants' initial entry into the
13   United States—SA Saenz conducted a videotaped interview
14   with Newland, with SA Herzog witnessing. SA Saenz
15   advised Newland in the English language of her <u>Miranda</u>
16   rights, which she waived. The agents also gave Newland
17   water and permitted her to use the restroom.
18   Newland stated that she took the bus to Chaidez's
19   house in El Centro on about Friday (November 16, 2007),
20   to stay with her for the weekend. Newland said that she
21   awoke on Sunday, November 18, 2007 at about 2:00 p.m. or
22   2:30 p.m., and that Chaidez came and went during the day.
23   Chaidez returned home to El Centro before dark and said,
24   "Let's go shopping." They went shopping down by the
25   border in Calexico, and then Chaidez suggested they go
26   have a torta at a shop she knows about. They went into
27
28

1  Mexico and had a torta, and then crossed back into the
2  United States, when they were arrested.
3  Newland said that when they went shopping, they
4  drove Chaidez's white Navigator from El Centro to
5  Calexico. Newland also said they drove the Navigator
6  across the border.
7  At about 1:49 a.m., Newland requested water, and SA
8  Herzog gave her a cup of water.
9  SA Saenz asked about Chaidez's other cars. Newland
10 said that Chaidez also owned an Acura, and that it was
11 in the shop right now. Newland stated that she believes
12 Chaidez, who she has known for about six months, was the
13 only one to drive the Lincoln Navigator. Newland denied
14 walking into Mexico earlier that day, and Newland denied
15 knowledge of the cocaine in the vehicle.
16 At about 2:00 a.m., Newland complained of being
17 diabetic and feeling the symptoms of an elevated glucose
18 count. The agents permitted her to retrieve her glucose
19 meter. Newland stated that her count was 363, which is
20 very elevated, but she declined medical attention when
21 SA Saenz offered to call the paramedics. At her request,
22 the agents provided her more water and she had a cough
23 drop. At 2:13 a.m., SA Saenz nevertheless requested
24 medical assistance. At 2:20 a.m., medical personnel
25 determined that Newland's glucose level was in fact 253,
26 which was near her normal standard, and she was medically
27 cleared.
28

### (2) Defendant Chaidez's Biographical Interview

On November 19, 2007, at about 3:00 a.m.—approximately 5½ hours after the defendants' initial entry into the United States—SA Saenz conducted a videotaped interview in the English language with Chaidez, with SA Herzog again witnessing. Chaidez invoked her <u>Miranda</u> rights, so the agents only obtained biographical information from her. During this brief interview, Chaidez stated she was a user of methamphetamine, and she stated her last use of methamphetamine was on November 16, 2007. The interview concluded at 3:15 a.m.

### (3) Defendant Newland's Second Videotaped Statement

At about 4:20 a.m., as the agents were preparing to transport the defendants to the Imperial County Jail, Newland requested to speak to the agents again, to amend her original statement.

In a videotaped statement, Newland stated that she had been paid in the past to act as a chauffeur for Chaidez, although she denied ever being compensated to drive a vehicle into the United States from Mexico. Newland also stated that she overheard Chaidez having a telephone conversation in Spanish with a male who Chaidez refers to as her "uncle." Newland said that she does not speak Spanish, so she did not know the nature of the conversation.

1    Newland said that she and Chaidez departed Chaidez's
2    residence in El Centro in a 2000 Acura owned by Chaidez,
3    with the intention of ultimately going to Mexicali,
4    Mexico.  She said they parked the Acura in Calexico,
5    California, and entered Mexico on foot, so that she and
6    Chaidez could retrieve Chaidez's Lincoln Navigator and
7    drive it into the United States.  Newland said that,
8    after entering the United States, she planned to drive
9    Chaidez's Acura to El Centro, while Chaidez continued to
10   drive the Lincoln Navigator.

    Newland also said that they did not go to Mexico to
12   eat tortas, as she had originally claimed.  Newland said
13   that she went to a Carl's Jr. restaurant across the
14   street from Dorian's in Mexicali, Mexico, where they
15   retrieved the white Lincoln Navigator.  This second
16   interview concluded at 4:40 a.m.

17       **D.   THE COMPLAINT**

18       On November 19, 2007, SA Saenz submitted a complaint
19   and attached statement of facts to U.S. Magistrate Judge
20   Peter C. Lewis.  In the statement of facts, which SA
21   Saenz signed and entitled "Summary of Defendant's Post-
22   Arrest Statement," he summarized Newland's post-arrest
23   statement as follows:

> NEWLAND was advised of her rights pursuant to Miranda, which she acknowledged and waived, agreeing to answer questions without the presence of an attorney. NEWLAND stated she and CHAIDEZ departed CHAIDEZ' residence in El Centro, California in a 2000 Acura owned by Chaidez with the intention of ultimately going to Mexicali, Baja California, Mexico. NEWLAND

>stated she and CHAIDEZ parked the Acura in Calexico, California and entered into Mexico afoot. NEWLAND stated, the reason for entering into Mexico afoot was so CHAIDEZ and NEWLAND could retrieve the Lincoln Navigator and drive it into the United States. Upon entering the United States, NEWLAND stated she was to drive the Acura to El Centro, California as CHAIDEZ continued to drive the Navigator.

See Complaint, attached as GE MH-1 (discovery pages 3-5), at 4-5. Magistrate Judge Lewis signed and approved the complaint.

**E.   SEARCH WARRANTS**

**(1)   Search Warrant for Acura, 07MJ8944**

On November 21, 2007, SA Saenz obtained a search warrant to search Chaidez's 2001 Acura, which was parked at a public parking facility at 201 West 2nd Street in Calexico, California. For the purposes of this response, the most relevant paragraphs of the affidavit supporting the search warrant are as follows:

>13. In a subsequent interview of NEWLAND by Special Agent Saenz, NEWLAND stated she and CHAIDEZ departed CHAIDEZ' residence in El Centro, California in a 2000 Acura owned by Chaidez with the intention of ultimately going to Mexicali, Baja California, Mexico. NEWLAND stated she and CHAIDEZ parked the Acura in a parking facility in Calexico, California and they entered into Mexico together afoot. NEWLAND stated the reason for entering into Mexico afoot was so CHAIDEZ and NEWLAND could retrieve the Lincoln Navigator and drive it into the United States. Upon entering the United States, NEWLAND stated she was to retrieve and drive CHAIDEZ' Acura to El Centro, California as CHAIDEZ continued to drive the Navigator.
>
>14. A search of the personal affects [sic] at the time of the arrest of CHAIDEZ and NEWLAND produced a parking receipt number 16302 for Double AA Parking, located at 201 West 2nd

       Street, Calexico, California, 92231. The receipt was dated November 18, 2007.

       \* \* \* \* \*

       16. On November 19, 2007 SA Saenz and SA C. Herzog traveled to Double AA Parking at 201 West 2nd Street, Calexico, California. SA Saenz and SA Herzog did discover an Acura MDX sports utility vehicle, bearing Vehicle Identification Number: 2HNYD182X1H504176, bearing California license plate 5YNS295, gold in color. Located on the dashboard of the vehicle was a parking receipt dated November 18, 2007 bearing receipt number 16302.

       17. On November 19, 2007, SA Saenz requested CBP assist him by providing a narcotics detection dog/handler team to screen the exterior of the vehicle bearing California license plate 5YNS295. SA Saenz observed the narcotics detector dog return several times to the area between the drivers side front and rear doors. SA Saenz asked CBP Canine Enforcement Officer (CEO) D. Alba if this was an indication that the vehicle contained narcotics in that area. CEO Alba stated it was inconclusive. CEO Alba further stated the only manner to provide a more conclusive answer was to inspect the interior of the vehicle in case a residual odor was emanating from the interior.

<u>See</u> Search Warrant and Application for Search Warrant in 07MJ8944 (Acura), attached as GE MH-2 (discovery pages 397-409), at 406-07.

       **(2) <u>Search Warrant for 862 Adams Avenue #A, 07MJ8949</u>**

On November 26, 2007, SA Saenz obtained a search warrant to search Chaidez's residence at 862 Adams Avenue, Apartment A, El Centro, California 92243. Paragraphs 13-17, as set forth above, are identical for both search warrants. However, the affidavit in support of the application to search Chaidez's residence adds the following information in paragraphs 19-20:

10

> 19. On November 21, 2007 ICE Office of Investigations Special Agents obtained a search warrant for the 2001 Acura MDX sports utility vehicle bearing Vehicle Identification Number: 2HNYD182X1H504176, bearing California license plate 5YNS295, gold in color. The vehicle was transferred from Double AA Parking at 201 West 2nd Street, Calexico, California to the Calexico, California East Port of Entry.
>
> 20. On November 23, 2007 a narcotic detection dog was utilized to screen the interior and exterior of the 2001 Acura MDX sports utility vehicle bearing Vehicle Identification Number: 2HNYD182X1H504176, bearing California license plate 5YNS295. CBP CEO K. Taylor asked SA Saenz if the vehicle had been confirmed to be utilized to transport narcotics. SA Saenz stated there was not confirmed evidence of such actions. CEO Taylor stated his canine unit had responded in a manner that indicated to him the canine unit detected a residual odor of a narcotic substance that may have been present within the vehicle at one time.

See Search Warrant and Application for Search Warrant in 07MJ8949 (Adams Residence), attached as GE MH-3 (discovery pages 372-96), at 392-93.

### III

### **POINTS AND AUTHORITIES**

**A. THE GOVERNMENT CONDUCT WAS ENTIRELY PROPER, AND THE INDICTMENT SHOULD NOT BE DISMISSED**

Chaidez argues that the indictment should be dismissed due to "outrageous government conduct." Specifically, Chaidez argues that the "agents deliberately and intentionally deceived the issuing magistrate by providing false information on the affidavit submitted in support of the search warrant." [Doc. 19-2, at 3.] The alleged "false information" is as follows: "During Ms. Newland's first post-arrest

1  statement she stated that she and Ms. Chaidez drove the
2  white Lincoln Navigator from El Centro to Mexico.
3  However, the agents failed to provide this contradictory
4  testimony to the Magistrate when they were requesting the
5  search warrant."  [Doc. 19-2, at 4.]  Based on the
6  allegedly improper results of the search warrants,
7  Chaidez argues, "The government has obtained an
8  indictment against Defendant based on statements,
9  tangible items, and other evidence seized through
10 outrageous misconduct."  [Doc. 19-2, at 4.]  We disagree.
11     There was no government misconduct here — outrageous
12 or otherwise – and, in any event, the indictment was not
13 based on any of the evidence obtained through the search
14 warrants.  Thus, there is no basis to dismiss the
15 indictment.
16     First, Chaidez's entire motion rests on the false
17 premise that the agents provided false information to
18 U.S. Magistrate Judge Peter Lewis.  As will be discussed
19 in detail in the section below, the agent's affidavit was
20 entirely truthful.
21     Second, Chaidez's real quarrel is with the
22 information provided to obtain the pre-indictment
23 complaint and warrants.  However, a "grand jury
24 indictment of [a defendant] following his arrest
25 remedie[s] any defect in the complaint and arrest
26 warrant."  Denton v. United States, 465 F.2d 1394, 1395
27 (5th Cir. 1972).
28

Finally, even assuming <u>arguendo</u> that the agents' actions were improper, omitting information from a search warrant affidavit is not the sort of misconduct that justifies the dismissal of an indictment. In <u>United States v. Ramirez</u>, 710 F.2d 535 (9th Cir. 1983), upon which Chaidez principally relies, the Ninth Circuit rejected the defendant's argument that the indictment should be dismissed based on the defendant's assertion that the police "illegally bribed and coerced him into working as an informer," while all the time intending to arrest him once his usefulness had ended. <u>Id.</u> at 541. The <u>Ramirez</u> court held that "[p]rosecution is barred only when the government's conduct is so grossly shocking and so outrageous as to violate the universal sense of justice." <u>Id.</u> at 539 (citation and internal quotation marks omitted). The court specifically pointed out that the "Supreme Court has never reversed a criminal conviction on this ground" and "[o]nly twice have federal circuits done so." <u>Id.</u> at 539-40. In both of those cases, the outrageous misconuct involved "the generation by police of new crimes merely for the sake of pressing criminal charges against the defendant." <u>Id.</u> at 540.

Here, as in <u>Ramirez</u>, the "government did not create the crime." <u>Id.</u> at 540. In fact, all of the alleged misconduct took place after the crime was complete and the defendants were in custody. Thus, dismissal of the

1    indictment is not justified under the law, and it would
2    result in an unwarranted windfall for these defendants.

3        **B.  THE SEARCH WARRANTS WERE SUPPORTED BY PROBABLE CAUSE AND TRUTHFUL AFFIDAVITS, AND THEREFORE THE EVIDENCE SEIZED SHOULD NOT BE SUPPRESSED**

5    Chaidez next argues that paragraph 13 of each of the
6    search warrant affidavits contained "false information."
7    Paragraph 13 of the search warrant affidavits states as
8    follows:

> 13. In a subsequent interview of NEWLAND by Special Agent Saenz, NEWLAND stated she and CHAIDEZ departed CHAIDEZ' residence in El Centro, California in a 2000 Acura owned by Chaidez with the intention of ultimately going to Mexicali, Baja California, Mexico. NEWLAND stated she and CHAIDEZ parked the Acura in a parking facility in Calexico, California and they entered into Mexico together afoot. NEWLAND stated the reason for entering into Mexico afoot was so CHAIDEZ and NEWLAND could retrieve the Lincoln Navigator and drive it into the United States. Upon entering the United States, NEWLAND stated she was to retrieve and drive CHAIDEZ' Acura to El Centro, California as CHAIDEZ continued to drive the Navigator.

18   See GE MH-2, at 406; GE MH-3, at 392.  Chaidez argues
19   that this paragraph is false, because it omits the fact
20   that Newland had "stated in her first post-arrest
21   statement that she and Ms. Chaidez drove the Lincoln
22   Navigator across the border."  [Doc. 19-2, at 5.]  We
23   disagree, since none of the information is false, and the
24   omission is not material.

25       In Franks v. Delaware, 438 U.S. 154 (1978), the
26   Supreme Court held that the Fourth Amendment entitles a
27   defendant to challenge the validity of a search warrant

affidavit if the defendant makes a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." Id. at 155-56; see also United States v. Napier, 436 F.3d 1133, 1136 (9th Cir.), cert. denied, 127 S.Ct. 164 (2006). The Supreme Court noted that "[t]here is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." Franks, 438 U.S. at 165.

Here, the defendants are not entitled to a Franks hearing, because they have failed to show that (1) the affidavits contained any materially false statements or material omissions, and (2) that probable cause was lacking after redaction of any false statements (or after inclusion of any omitted information).

First, all of the information in paragraph 13 is 100% true. Newland made all of the statements attributed to her in paragraph 13, and they were all recorded on videotape.

Second, the omission of the fact that Newland earlier claimed that they had driven the Lincoln Navigator – not the Acura – to the border was not material to the finding of probable cause. Regardless of any prior statements to the contrary, Newland's statement about driving the Acura to the border was

1  reliable, because it was <u>corroborated</u> by the agents' trip
2  to Double AA Parking.  During that trip, as discussed in
3  the affidavits, the agents confirmed that the Acura was
4  in fact parked there and that the parking receipt matched
5  the receipt found in the defendants' personal effects.
6  <u>See</u> GE MH-2, at 406-07; GE MH-3, at 392-93.

7  Third, even if the agents had not corroborated
8  Newland's statement about driving the Acura from
9  Chaidez's house, the omission of Newland's prior
10 inconsistencies was not material.  The case of <u>Belmontes</u>
11 <u>v. Woodford</u>, 350 F.3d 861 (9th Cir. 2003), is
12 instructive.  In <u>Belmontes</u>, the police arrested
13 codefendant Robert Bolanos for first-degree murder.
14 During Bolanos' interrogation, he identified his
15 accomplice as defendant Belmontes, who was not implicated
16 in any other way at the time.  "On the strength of
17 Bolanos' statement, the police obtained a warrant" and
18 arrested defendant Belmontes.  <u>Id.</u> at 869.  The defendant
19 later challenged the affidavit, establishing that the
20 police had omitted the fact that, among other things, "at
21 first, Bolanos lied when speaking to the police."  <u>Id.</u>
22 at 888; <u>see also</u> <u>id.</u> at 888-89 (police also omitted three
23 other pertinent facts that "cast aspersions on Bolanos'
24 credibility because they highlight his strong motive to
25 shift blame for [the victim's] death to someone else").
26 The Ninth Circuit held that the fact that the codefendant
27 had initially lied to police was "plainly of no

1  relevance" to the finding of probable cause, and denied
2  the defendant's Franks claim.  Id. at 889.  Similarly,
3  here the omission of codefendant Newland's initial
4  inconsistencies was of no relevance to the finding of
5  probable cause.
6   Finally, the defendants have failed to show that the
7  omitted information undermines the Magistrate Judge's
8  finding of probable cause.  Regardless of the prior
9  inconsistencies, the Magistrate Judge knew that Newland
10 was charged with the same crime as Chaidez, and thus had
11 a motive to lie.  But Newland's statement about driving
12 the Acura from Chaidez's home in El Centro to a parking
13 lot and then walking into Mexico on foot to obtain the
14 Lincoln Navigator was corroborated by the agents'
15 investigation.  Thus, there was probable cause to believe
16 that evidence might be found in the Acura and at
17 Chaidez's house.
18  In summary, the agents here did exactly what is
19 expected of them under the Constitution.  They drew up
20 a 6-page affidavit for the Acura and an 8-page affidavit
21 for Chaidez's residence, which both contained accurate
22 summaries of the relevant facts in the investigation at
23 the time.  The agents did not provide any knowingly or
24 recklessly false statements or material omissions to the
25 Magistrate Judge.  And they waited until a neutral
26 magistrate had found probable cause before conducting any

searches.  Thus, the defendants' motion to suppress the fruits of those search warrants should be denied.

### C. **NO OPPOSITION TO FURTHER MOTIONS**

The United States does not oppose granting leave to file further motions, so long as any new motions are based on new discovery and the order applies equally to both parties.

## IV

## **CONCLUSION**

For the foregoing reasons, the United States requests that the Court deny Defendant's motions, except where unopposed.

DATED: March 26, 2008

                      Respectfully submitted,

                      KAREN P. HEWITT
                      United States Attorney

                      /s/ *Andrew G. Schopler*
                      ANDREW G. SCHOPLER
                      Assistant U.S. Attorney

```
                    UNITED STATES DISTRICT COURT

                   SOUTHERN DISTRICT OF CALIFORNIA


UNITED STATES OF AMERICA,  ) Case No. 07CR3278-JM
                           )
         Plaintiff,        )
                           )
    v.                     ) CERTIFICATE OF SERVICE
                           )
PATRICIA M. CHAIDEZ (1),   )
YOLANDA R. NEWLAND (2),    )
                           )
         Defendants.       )
                           )
_____)
```

IT IS HEREBY CERTIFIED THAT:

   I, ANDREW G. SCHOPLER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

   I am not a party to the above-entitled action. I have caused service of **UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

   1. Lupe Rodriguez
   2. Francisco Sanchez

   I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

   N/A

the last known address, at which place there is delivery service of mail from the United States Postal Service.

   I declare under penalty of perjury that the foregoing is true and correct.

   Executed on March 26, 2008

                    /s/ *Andrew G. Schopler*
                    ANDREW G. SCHOPLER
                    Assistant United States Attorney

07CR3278-JM